LAUCRESTA REYNOLDS v. ERVIN JUNIOR MOTLEY

No. 8910DC178

(Filed 21 November 1989)

1. **Parent and Child § 10 (NCI3d); Bastards § 10 (NCI3d) — URESA action — filed in name of mother — Social Services real party in interest**

     Although the name of the mother, Laucresta Reynolds, was improperly substituted for that of the Virginia District Division of Child Support Enforcement (DCSE) when the action was docketed, it was not necessary to dismiss the appeal because the record clearly shows that the action was prosecuted on behalf of DCSE, the real party in interest. N.C.G.S. Chapter 52A, N.C.G.S. § 1A-1, Rule 17.

     **Am Jur 2d, Bastards § 85.**

2. **Parent and Child § 10 (NCI3d) — URESA action — standing of Social Services to bring action**

     The Virginia District Division of Child Support Enforcement had standing under N.C.G.S. § 52A-8.1 to bring an URESA action, even though it did not have custody of the alleged children-obligees, because the children-obligees had, by receiving public assistance in Virginia, effected an assignment of their rights of enforcement under URESA to DCSE by operation of law.

     **Am Jur 2d, Bastards § 85.**

3. **Parent and Child § 10 (NCI3d)— URESA action—determination of paternity—subject matter jurisdiction lacking**

The trial court erred in an URESA action by denying defendant's motion to dismiss for lack of subject matter jurisdiction where defendant was presumed to have been present in North Carolina during the period or part of the period for which support was sought because there was no showing to the contrary; North Carolina's substantive laws thus apply to determine defendant's duties of support; no certified copy of the certificate of birth was attached to the DCSE petition as required by N.C.G.S. § 49-14(a); North Carolina was therefore without subject matter jurisdiction to adjudicate defendant's paternity; and there was no prior judicial determination of defendant's paternity. Defendant's so-called "acknowledgment" of paternity was neither executed in accordance with the requirements of N.C.G.S. § 110-132 nor accompanied by written affirmation of paternity executed by the mother of the alleged children-obligees, and the mere fact that defendant made child support payments cannot of itself be dispositive of the jurisdictional question.

**Am Jur 2d, Bastards §§ 76, 104, 112.**

APPEAL by defendant from *Bullock, Stafford G., Judge.* Order entered 7 October 1988 in WAKE County District Court. Heard in the Court of Appeals on 10 October 1989.

The record discloses that on 6 May 1988, the Danville, Virginia District Division of Child Support Enforcement ("DCSE") brought an action against defendant, a North Carolina resident, under the Uniform Reciprocal Enforcement of Support Act ("URESA"). The verified petition, filed in the Danville, Virginia Juvenile and Domestic Relations District Court alleged, *inter alia*, that defendant and Laucresta Reynolds, never married, were the parents of the dependents Michael, Marie, and Tamela Reynolds, and that pursuant to an "acknowledgment of paternity" and "administrative determination" by the Danville Department of Social Services, defendant was responsible for the children's support. The petition further alleged that defendant had been making child support payments under a voluntary wage assignment, that such payments were in arrears, and that DCSE was an obligee as defined by URESA, by virtue of the children's receipt of public assistance in Virginia. The relief sought by DCSE was an order requiring

defendant to pay arrears and reimbursement for the period of 1 January 1979 to 1 April 1988, and to pay continuing child support. An incomplete, undated form purporting to be defendant's acknowledgment of paternity and a document purporting to be defendant's record of child support payments were appended to the petition. No written agreement to support the children, executed by defendant, was produced, and no prior judicial proceedings to determine defendant's paternity and duty to support was shown to have ever been instituted.

The Virginia court certified the petition and ordered that the action be transmitted to the Wake County, North Carolina District Court for enforcement pursuant to URESA. Upon receipt, the cause was docketed and summons was issued naming Laucresta Reynolds as plaintiff. Defendant answered, denying both his paternity and any obligation to support the children. He admitted, however, having paid child support in the past. Defendant's motions to dismiss for failure to state a claim and for lack of subject matter jurisdiction were denied, and a hearing was held at the 30 September 1988 civil session of the Wake County District Court. At the close of plaintiff's evidence, defendant moved for directed verdict. This motion was also denied. The court thereafter entered an order containing no findings of fact and requiring defendant to pay both arrearage and continuing child support to DCSE. From this order, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General T. Byron Smith and Associate Attorney General Bertha Fields, for plaintiff-appellee.*

*Sally H. Scherer for defendant-appellant.*

WELLS, Judge.

[1] At the outset, we consider *ex mero motu* whether plaintiff is the proper party to prosecute this URESA action in North Carolina. URESA is a procedural device, adopted in every state, which provides a mechanism for the expedited enforcement of duties of child support. *See* N.C. Gen. Stat. ch. 52A (1984 and Supp. 1988); 23 Am. Jur. 2d 966, *et seq.* Under URESA, an obligee (i.e., one "to whom a duty of support is owed") who seeks to enforce child support obligations against an out-of-state obligor must file a verified complaint in the initiating state. N.C. Gen. Stat. §§ 52A-3(6), -10; *accord*, Va. Code Ann. §§ 20-88.13(8), -88.21 (1983 and Supp. 1989).

The court in the initiating state must then determine whether the complaint "sets forth facts from which it may be determined that the defendant owes a duty of support and [whether] a court of the responding state may obtain jurisdiction of the defendant[.]" N.C. Gen. Stat. § 52-11; *accord*, Va. Code Ann. § 20-88.22. If it finds these requirements to be satisfied, the initiating court transmits certified copies of the complaint to the court of the responding state for prosecution of the action. *Id.* When a court of North Carolina, acting as responding state, receives such copies from the court of the initiating state, it must, *inter alia*, docket the cause and notify the district attorney, who appears "on behalf of the obligee." N.C. Gen. Stat. §§ 52A-10.1, -12.

The record discloses that the present action was instituted in Virginia by the DCSE, which filed a verified petition in the initiating court. That court, upon making the required findings, transmitted certified copies of the petition to the Wake County District Court, the jurisdiction of defendant's residence. In docketing the action, it appears that the name of the alleged mother, Laucresta Reynolds, was improperly substituted as plaintiff for that of DCSE. Laucresta Reynolds is neither an obligee as defined by URESA, nor did she file a verified complaint in the initiating state as required by URESA. We need not, however, dismiss the appeal for this technical defect, inasmuch as the record clearly shows that the action was prosecuted on behalf of DCSE, the real party in interest. *Settle v. Beasley*, 309 N.C. 616, 308 S.E.2d 288 (1983); N.C. R. Civ. P., Rule 17 (1983). Accordingly, we turn to addressing the merits of the arguments brought forward by defendant.

[2] Defendant first contends that the court erred in denying his motion to dismiss in that DCSE, because it did not have custody of the alleged children-obligees, had no standing to bring this action. We disagree.

G.S. § 52A-8.1 controls this issue. It provides:

Whenever a county of this State furnishes support to an obligee, it has the same right to invoke the provisions [of URESA] as the obligee to whom the support was furnished for the purpose of securing reimbursement for such support and of obtaining continuing support[.]

Our courts have held that an out-of-state governmental entity has standing to bring an action under this provision when (1) such

**REYNOLDS v. MOTLEY**

[96 N.C. App. 299 (1989)]

entity has furnished support to an obligee via public assistance funds and (2) the obligee to whom such support was provided has assigned the right of enforcement under URESA to that governmental entity. *Dept. of Social Services v. Skinner*, 48 N.C. App. 621, 269 S.E.2d 678 (1980). Under URESA, such an assignment occurs by operation of law immediately upon the obligee's receipt of public assistance funds. N.C. Gen. Stat. § 52A-8.1; *accord*, Va. Code Ann. § 20-88.19; *cf.*, N.C. Gen. Stat. § 110-137 (1988) (acceptance of public assistance constitutes an assignment of rights to the state or county). In this case the alleged children-obligees, by receiving public assistance in Virginia, effected an assignment of their rights of enforcement under URESA to DCSE by operation of law. Thus, DCSE has standing to bring this action. *Dept. of Social Services, supra*.

[3] Defendant next contends that the court erred in denying his motion to dismiss for lack of subject matter jurisdiction in that his paternity and thus his duty of support under URESA was not established.

It is well settled that "paternity must be judicially established to warrant relief [under URESA]." *Smith v. Burden*, 31 N.C. App. 145, 228 S.E.2d 662 (1976). The record discloses that no judicial determination of defendant's paternity with respect to the alleged children-obligees had been made at the time this action was initiated. This, however, is not fatal, inasmuch as North Carolina courts are expressly granted the authority to "adjudicate the paternity issue" in actions brought under URESA. N.C. Gen. Stat. § 52A-8.2. Nevertheless, URESA, being a procedural mechanism for the enforcement of duties of support, does not provide additional substantive grounds for determining the existence of the duty of support. *Stevens v. Stevens*, 68 N.C. App. 234, 314 S.E.2d 786, *cert. denied*, 312 N.C. 89, 321 S.E.2d 908 (1984); *see also Mahan v. Read*, 240 N.C. 641, 83 S.E.2d 706 (1954) (outlining the history of URESA). *A fortiori*, URESA does not provide additional grounds for determining paternity. Consequently, a North Carolina court adjudicating the issue of paternity in a URESA action must look to the applicable substantive law governing the determination of paternity. This, in turn, must be determined by reference to the statutory choice of law directive pertaining to URESA actions. *Pieper v. Pieper*, 323 N.C. 617, 374 S.E.2d 275 (1988).

The statutory choice of law directive pertaining to URESA actions is found at G.S. § 52A-8 which provides that

> [d]uties of support applicable under [URESA] are those imposed or imposable under the laws of any state where the obligor was present during the period or any part of the period for which support is sought. The obligor is presumed to have been present in the responding state during the period for which support is sought until otherwise shown.

Because there has been no showing to the contrary, defendant is presumed to have been present in North Carolina, the responding state, and thus our State's substantive laws apply to determine defendant's duties of support. *Pieper, supra.*

Under North Carolina law, the duty of a putative father to support his illegitimate child is predicated on the judicial establishment of his paternity with respect to such child "pursuant to G.S. 49-14." N.C. Gen. Stat. § 49-15 (1984); *Tidwell v. Booker*, 290 N.C. 98, 225 S.E.2d 816 (1976); *see also Napowsa v. Langston*, 95 N.C. App. 14, 381 S.E.2d 882 (1989). G.S. § 49-14(a) provides, in pertinent part, that "[a] certified copy of a certificate of birth of the child shall be attached to the complaint." In the instant case, the record discloses that no such certified copies of the birth certificates of the alleged children-obligees were attached to the DCSE petition. Because this statutory prerequisite was not complied with, we are compelled to conclude that the North Carolina court was without subject matter jurisdiction to adjudicate defendant's paternity. *See Dept. of Social Services v. Williams, infra.* Since there was neither a prior judicial determination of defendant's paternity nor jurisdiction to adjudicate the issue of paternity, defendant's motion to dismiss for lack of subject matter jurisdiction should have been granted by the court.[1]

---

1. The State's assertion at oral argument that, notwithstanding plaintiff's failure to comply with the statutory requirements, the court had subject matter jurisdiction under URESA to adjudicate defendant's paternity in that, pursuant to G.S. § 52A-19, the verified petition of DCSE constituted *prima facie* evidence of the facts stated therein is unavailing. Careful reading of G.S. § 52A-19 persuades us that the Legislature did not intend for that statute, as part of the expedited procedures applying under URESA, to obviate the requirements of G.S. § 49-14 in a paternity adjudication incident to an URESA action. To hold otherwise would create a clear disparity in the procedural protections afforded to putative fathers defending paternity actions under G.S. § 49-14 and those afforded to putative fathers defending paternity actions incident to the "typically open-and-shut" proceedings under

REYNOLDS v. MOTLEY

[96 N.C. App. 299 (1989)]

The State counters that a judicial determination of paternity is unnecessary in that defendant executed a written acknowledgment of paternity which was appended to DCSE's verified petition. The State urges that this acknowledgment, coupled with defendant's actions in paying support in the past, constitutes sufficient evidence that defendant is the responsible party. We are not persuaded.

It is true that G.S. § 110-132 allows a written acknowledgment of paternity "[i]n lieu of . . . any legal proceeding instituted to establish paternity" in actions to enforce duties of support under G.S. ch. 110. Such an acknowledgment must, however, be "sworn to before a certifying officer or notary public" and "accompanied by a written affirmation of paternity executed and sworn to by the mother of the dependent child" for whom support is sought. *Id.* G.S. § 110-132 also provides that "a written agreement to support [a] child by periodic payments" is enforceable as an order of support, if such an agreement complies with the enumerated statutory requirements.

Assuming *arguendo* that this statute applies in actions under URESA to enforce duties of support as against a putative father, its requirements clearly have not been satisfied in this case. The so-called "acknowledgment" of paternity was neither executed in accordance with the above statutory requirements nor accompanied by a written affirmation of paternity executed by the mother of the alleged children-obligees. Moreover, the record fails to disclose that a written agreement to support the children was ever executed by defendant. Where the requirements of G.S. § 110-132 are not complied with, the court has no jurisdiction to enforce child support duties under G.S. ch. 110. *Dept. of Social Services v. Williams*, 52 N.C. App. 112, 277 S.E.2d 865 (1981).

Finally, with respect to defendant's actions in paying child support to the alleged children-obligees in the past, we do not deny that such actions may constitute some evidence that defendant owes a duty of support, once the jurisdictional barrier has been surmounted through compliance with the statutory requirements. The mere fact that defendant made such payments, however, cannot of itself be dispositive of the jurisdictional question, in view

---

URESA. *See 2 Lee on North Carolina Family Law* § 169 at 350 (1980). This we cannot do.

of the clear statutory prerequisites to maintaining actions under either G.S. § 49-14 or G.S. § 110-132.

For the foregoing reasons, the judgment is

Reversed.[2]

Judges JOHNSON and ORR concur.

---

2. Because our holding that the court lacked subject matter jurisdiction is dispositive, we do not address defendant's second argument challenging the court's denial of his motion for directed verdict or his third argument challenging the court's order on the grounds that it failed to include findings of fact. With respect to the latter, however, we note that under *Grimes v. Grimes*, 78 N.C. App. 208, 336 S.E.2d 664 (1985), such findings must be present in a support order entered under URESA.